1 | Gary M. Messing, Bar No. 75363
      gary@majlabor.com
2 | Jason H Jasmine, Bar No. 215757
      jason@majlabor.com
3 | D. Paul Bird II, Bar No. 202066
      paul@majlabor.com
4 | **MESSING ADAM & JASMINE LLP**
    235 Montgomery St., Suite 828
5 | San Francisco, California 94104
    Telephone:      415.266.1800
6 | Facsimile:      415.266.1128

7 | Attorneys for Plaintiff EVAN ALDER, *et al.*

8 | Philip J. Pogledich, County Counsel
    Ronald Martinez, Deputy County Counsel
9 | **OFFICE OF COUNTY COUNSEL**
    **YOLO COUNTY**
10 | 625 Court Street, Room 201
     Woodland, California  95695
11 | Telephone:      530.666.8172
     Facsimile:      530.666.8279

12 |

     Attorneys for Defendant COUNTY OF YOLO

13 |

14 | **UNITED STATES DISTRICT COURT**

15 | **EASTERN DISTRICT OF CALIFORNIA**

16 |

17 | EVAN ALDER, on behalf of himself and all
     similarly situated individuals,

Case No. 2:16-cv-01682-VC

18 |                            Plaintiff,

**NOTICE OF PARTIES' RENEWED
MOTION AND RENEWED MOTION TO
APPROVE SETTLEMENT OF ACTION
UNDER FAIR LABOR STANDARDS ACT**

19 |

20 |            v.

21 | COUNTY OF YOLO,

Date:      TBD
Time:      TBD
Crtrm.:    TBD

22 |                            Defendant.

The Hon. Vince Chhabria

23 |

Complaint Filed:  July 20 2016

24 |

25 |

26 |

27 |

28 |

# I.

# INTRODUCTION

This renewed motion to approve settlement of this action under the Fair Labor Standards Act addresses concerns identified by the Court in its January 22, 2018 order denying the prior motion for approval of the settlement (the "Order") between Plaintiffs Evan Adler, *et al.*, and Defendant Yolo County (the "Parties").  Those nine issues (paraphrased) are

    A.    Notice:

        1.    Why is the notice being sent only to current non-exempt County employees?

        2.    Is the County's sending notice to the Putative Plaintiffs a conflict of interest? and

        3.    What follow-up measures will ensure that Putative Plaintiffs receive notice?

    B.    Release:

        1.    The Parties release is unclear as to what claims are being released especially as the Parties intended only to make the settlement agreement available at the Clerk's office

    C.    Settlement Agreement

        1.    Do different settlement periods apply to different bargaining units?

        2.    How is a 66.7% discount appropriate for payments made under the Bona Fide Plan dispute?

    D.    Plaintiffs' Attorney Fees

        1.    Can Plaintiffs' attorneys receive both statutory and contingent fee awards in this case particularly as the latter reduces the amount each plaintiff receives?

        2.    What is Plaintiffs' counsel reasonable statutory fee award and is it limited by a common-fund benchmark of 25%? and

        3.    Would it be more appropriate for the Court to defer ruling on attorneys' fees until after putative plaintiffs have opted in?

## A.    NOTICE OF SETTLEMENT

### 1.    Notice Is Being Sent to Current *and* Former Non-exempt County Employees.

To address the Court's first concern, in the body of the initial motion and supporting declaration, Plaintiffs' inadvertently omitted "and former" and the Parties are, in fact, providing notice to all Putative Plaintiffs.  Messing Declaration in Support of Renewed Motion (Messing Decl. ISO Renewed Motion), para. 4.  As the first paragraph of the notice attached as Exhibit B to

the Messing Declaration in support of the initial motion demonstrates, the Parties intended to provide notice to *all* county employees who worked overtime within the applicable recovery period which includes both current and former non-exempt County employees:

> "If you were employed with the County of Yolo between July 20, 2013 to November 17, 2017 and were not exempt from the overtime requirements of the Fair Labor Standards Act ('FLSA'), worked overtime, and either (1) at any time from July 20, 2013 to the present received cash *in-lieu* of health insurance benefits or (2) at any time from July 20, 2014 to the present received health insurance benefits through the County, then this Notice of Collective Action Settlement Claims Form & Release ('Notice') describes your rights and potential benefits from a collective action settlement."

Messing Declaration in Support of Initial Motion (Messing Decl. ISO Initial Motion), Notice and Release, Dkt. No. 26-5.

Regarding the Court's questions about the notice procedure, the Parties believe that their proposed method of service will ensure that all Putative Plaintiffs are properly identified and provided notice of the settlement.  Messing Declaration in Support of Renewed Motion (Messing Decl. ISO Renewed Motion), para. 5;  Martinez Declaration in Support of Renewed Motion (Martinez Decl. ISO Renewed Motion), para. 3.

## 2.    There Will Be no Conflict of Interest with the County's Sending Notice.

As to the County providing notice, current and former non-exempt employees of six bargaining units will take part in settlement of this matter.[1]  The County is in possession of the most-recent contact information for these persons.  Martinez Decl. ISO Renewed Motion, para. 4. Plaintiffs' counsel represents only one of the bargaining units and, therefore, would not be entitled to receive privileged contact information for some of the personnel in the other five units.[2] Further, as an officer of this Court, the County's deputy counsel represents that the County will

---

[1]  Plaintiffs and Putative Plaintiffs are comprised of six distinct bargaining units:  Correctional Officers Association; Deputy Sheriffs Association ("DSA"); General Unit, Supervisors & Professional Employee's Association; Probation Association; and Sheriff's Safety Management Association.  Messing Decl. ISO Initial Motion, para. 16, Dkt. No. 26-2, and Exh. A:  Settlement Agreement, "Recitals," Section H, p. 2, Dkt. No. 26-3.
[2]  Of these bargaining units, Plaintiffs' attorneys represent only the DSA in its labor relations. Messing Declaration ISO Renewed Motion, para. 6.

ensure it properly identifies all Putative Plaintiffs and then timely serves them notice of the

settlement by U.S. first class mail as required by this Court's order.   Martinez Decl. ISO Renewed

Motion, para. 5.  Plaintiffs' counsel is also designating a *cy pres* which will ensure that no portion

of the settlement is reversionary and the County will pay full damages.[3]  Messing Decl. ISO

Renewed Motion, para. 7; Martinez Decl. ISO Renewed Motion, para. 6; see *Rangel v. Fedex*

*Ground Package Sys., Inc.*, 2015 WL 12698310, at *2 (C.D. Cal. Apr. 8, 2015) (allowing

remainder of the net settlement amount to be paid to Public Counsel Law Center as the *cy pres*

beneficiary pursuant to the terms of the settlement agreement).  The Court was concerned that the

County has an incentive to be less than diligent about serving notice as "the fewer people who opt

in, the less money it will have to pay."   Also, the Parties defined the class periods in the

Settlement Agreement; therefore, a Putative Plaintiff will not receive less money because of any

statute of limitations issue.  Messing Decl. ISO Initial Motion, Ex. A:  Settlement Agreement,

"Terms" Section(2)(b), Dkt. No. 26-3; Messing Decl. ISO Renewed Motion, para. 8.  Thus the

County has no financial incentive to not identify and provide Notice to every potential Putative

Plaintiff as the County's deputy counsel has declared it will under penalty of perjury.

### 3.      The Parties Will Follow-up to Ensure Putative Plaintiffs Receive Notice.

As to how the Parties will follow up to ensure all Putative Plaintiffs receive notice,

Plaintiffs' counsel will provide the County with envelopes that list Plaintiffs' counsel office as the

return address and the County will provide Plaintiffs' counsel the names of all Putative Plaintiffs

who are to receive awards, which Plaintiffs' counsel will cross-check with the names of those who

return releases.  Martinez Decl. ISO Renewed Motion, para. 5; Messing Decl. ISO Renewed

Motion, para. 9.  If USPS returns any notice packets as undeliverable, Plaintiffs' counsel will then

be made aware of any Putative Plaintiff not receiving the Notice and will employ several quality

control measures to locate Putative Plaintiffs, including checking lists of addresses against the

National Change of Address database and performing computerized locator traces to locate them

---

[3]  Plaintiffs have designated "The Center for Workers' Rights" which provides wage & hour legal services for low-wage workers and their families in the greater Sacramento area.  Messing Decl. ISO Renewed Motion, para. 7.

1  (*e.g.*, "411," "People Search 411," *etc.*).  Messing Decl. ISO Renewed Motion, para. 10; see *Walsh*

2  *v. CorePower Yoga LLC*,  2017 WL 4390168, at *5 (N.D. Cal. Oct. 3, 2017).  If Plaintiffs' counsel

3  is unsuccessful in locating a Putative Plaintiff, counsel will report to the Court their name, last

4  known address, and the time and efforts Plaintiffs' counsel employed to locate them.  Messing

5  Decl. ISO Renewed Motion, para. 11.

6  **B.    RELEASE**

7       Next, the Order states the Parties release is unclear especially as the Parties intended only

8  to make the settlement agreement available at the Clerk's office.  In *Goodwin v. Winn Mgmt. Grp.*

9  *LLC*, the court approved the release in that FLSA action where "the released claims track

10  plaintiff's claim in this action and the settlement does not release unrelated claims that class

11  members may have against defendant."  *Goodwin v. Winn Mgmt. Grp. LLC*, 2017 WL 3173006, at

12  *11 (E.D. Cal. July 26, 2017).

13       To remedy the Court's concern, the Parties have revised the release to track only the claims

14  in the complaint by adding the following to the release:

15       "In exchange for my settlement payment, I agree to the release of legal claims
        against the County asserted in this action as follows:

16

17       (1) that the County violated the Fair Labor Standards Act by failing
        to properly calculate the overtime rate of pay by excluding
        contributions of cash *in-lieu* of health care benefits payments from
18      the regular rate of pay,

19       (2)  that the County violated the Fair Labor Standards Act by failing
        to properly calculate the overtime rate of pay because the flexible
20      benefits plan was not bona fide, and

21       (3)  that the County violated the Fair Labor Standards Act by failing
        to properly calculate the overtime rate of pay because the County
22      failed to include the difference in the cash amount and the employer
        contribution for medical benefits coverage."

23

24  Messing Decl. ISO Renewed Motion, para. 12-13, Ex. 1, Revised Release.

25       Further, to ensure that all Putative Plaintiffs have access to the settlement agreement, the

26  revised release provides that the settlement agreement may be viewed by checking Plaintiffs'

27

28

1    counsel's website at <<MAJLabor.com/YoloFLSASettlementAgreement/>>[4] as well as by

2    visiting the office of the Clerk of the Court.  Messing Decl. ISO Renewed Motion, para. 14.

3    **C.    SETTLEMENT AGREEMENT**

4          The Order next inquires  (1) why do different settlement periods apply to different

5    bargaining units and (2) why is a 66.7% discount appropriate for payments made under the Bona

6    Fide Plan dispute.

7          **1.    Different Settlement Periods Apply to Different Collective bargaining Units Because the County Corrected the Units' Payroll at Different Times.**

8

9          The Parties' settlement agreement sets out a different settlement period for certain

10   bargaining units which reflects an extra four months, back to July 2014, because the County

11   corrected those units pay in September 2016, over one year before it fixed other units pay in

12   November 2017; therefore those units' damages ended earlier than the other units.  Plaintiffs'

13   attorneys bargained for an extra four months of damages for the cash-back claim that those units

14   otherwise would not have received.

15         Specifically, in September 2016 the County corrected the pay of members of the General

16   Unit, Probation Association, Correctional Officers' Association, Deputy Sheriffs' Association

17   (bargaining units that receive a fixed amount of cash for waiving health benefits) and

18   unrepresented employees who do not receive the benefit package.  Martinez Decl. ISO Renewed

19   Motion, para. 7.  As these Putative Plaintiffs have yet to opt in to this matter and there was no

20   agreement to limit the statute of limitations on their claims, the longest period for which the

21   County would have had to pay them damages would have been from November 2014 to

22   November 2017, which reflects three years back from the settlement date.  Messing Decl. ISO

23   Renewed Motion, para. 15.  But recognizing that their pay was corrected in September 2016 and

24   they would not receive damages from then up to November 2017, Plaintiffs' counsel bargained for

25   and obtained four extra months of damages for the cash back claim back to July 2014 (three years

26

27   _____

28   [4]  If Plaintiffs' counsel's Information Technology specialist advises that different terminology is
     more appropriate, this link address may be revised and, if so, Plaintiffs' counsel will ensure the
     release properly reflects the new information.  Messing Decl. ISO Renewed Motion, para. 14.

1   from the filing date of the complaint).  Messing Decl. ISO Initial Motion, Ex. A:  Settlement

2   Agreement, "Terms" section 2(b), Dkt. No. 26-3; Messing Decl. ISO Renewed Motion, para. 15.

3        For the other units, the settlement periods were determined as follows

4            1)  Named-Plaintiffs:  July 20, 2013 (first pay period three years back from the date
             of filing of the complaint) to November 3, 2017 (first pay period after corrected pay

5            and signed settlement agreement) (Messing Decl. ISO Initial Motion, Ex. A:
             Settlement Agreement, "Terms" section 1(b)(i)(2)(a), Dkt. No. 26-3;

6
             2)  Consenters:  November 7, 2013 (first pay period three years back from the date

7            of filing of consents) to November 3, 2017 (first pay period after corrected pay and
             signed settlement agreement) (*Id.* at section 1(b)(i)(2)(b), Dkt. No. 26-3;

8
             3)  Members of the Supervisors and Professional Employee's Association, Sheriff's

9            Management Association (bargaining units that receive a benefits package) and
             unrepresented employees that receive a benefits package:  from November 3, 2014

10           (first pay period three years prior to date of correction of pay and signed settlement
             agreement) to November 3, 2017 (first pay period after corrected pay and signed

11           settlement agreement) (*Id.* at section 2(b), Dkt. No. 26-3).

12       Thus, settlement is more than reasonable as counsel obtained four additional months of

13   damages that certain bargaining units would otherwise not have been entitled to.

14       **2.    A 66.7% Discount Is Appropriate for Payments Made Under the Bona Fide**
             **Plan Dispute Because it is a Novel, Untested Claim and the Amount**

15           **Represents the Parties' Best Estimate of Success.**

16       The Parties' agreement to a 66.7% discount on the Bona Fide Plan dispute is appropriate as

17   this claim is untested to verdict at trial and there appear to be no similar claims that have been

18   settled.  Therefore, the 33.3% recovery of damages is a tangible monetary benefit for the affected

19   class.

20       As Peter Toll Hoffman states in his article regarding how to value a case for settlement in

21   the Journal of Dispute Resolution:

22           "Before a party can calculate its break-even point, the amount at
             which it is indifferent between settlement and trial, it must have

23           some estimation of the anticipated outcome of trial against which it
             can compare any settlement offer.  To make a comparison, it is not

24           only necessary to predict whether the plaintiff or defendant will
             prevail, but what amount of damages will be awarded must be

25           calculated as well."

26   Peter Toll Hoffman, *Valuation of Cases for Settlement:  Theory and Practice*, p. 8, 1991 J. Disp.

27   Resol. (1991).  He notes that when the law applies an objective measure of damages, the

28   anticipated verdict amount is measured by comparing the money value of the damages against the

applicable standard. *Id.* It may go without saying but the best predictor is what verdicts returned in cases similar to the one being valued. *Id.* at 9. If verdicts are rare, then the Parties can look to settlements in similar claims adjusted to reflect the unique facts of the case. *Id.* at 12-15. Mr. Tollman provides no guidance, however, in an instance such as this where the dispute is novel and extensive searches of caselaw, with the help of Westlaw research attorneys, have revealed no verdicts or similar settlements. Bird Decl. ISO Renewed Motion, paras. 5, 7.

Further reflecting the uniqueness of Plaintiffs' Bona Fide Plan dispute, there is no current standard that establishes whether a plan is bona fide. A 2003 Department of Labor opinion letter stated that a plan was bona fide if the cash-in-lieu of benefits payments accounted for no more than 20% of the employer's total contribution amount. July 2, 2003 Dep't of Labor Op. Letter, 2003 WL 23374600, at *2. But in 2016 the Ninth Circuit found the opinion letter "unpersuasive" because it "fails to explain its reasoning for the adoption of the 20% ceiling." *Flores v. City of San Gabriel*, 824 F.3d 890, 902–03 (9th Cir. 2016), *cert. denied sub nom. City of San Gabriel, Cal. v. Flores*, 137 S. Ct. 2117, 198 L. Ed. 2d 196 (2017). Further, the *Flores* court found that San Gabriel's flexible benefits plan was not bona fide because the city paid out 40% of its total contribution amount as cash-in-lieu of benefits payments. *Id.* at 903. In this matter, the County's cash-in-lieu of benefits payments accounted for approximately 21% of its total contribution amount for the fiscal years 2014 through 2016. Martinez Decl. ISO Renewed Motion, para. 8. Obviously this amount does not approach the 40% in Flores that rendered that flexible benefits plan non-bona fide. But, with the Flores court throwing out the DOL's 20% standard, if this matter proceeded to trial, Plaintiffs would be litigating a matter of first impression for the trial court.

Further, district courts have approved settlements awarding damages of as low as 30% on an FLSA claim. *Jones v. Agilysys, Inc.* was a nationwide FLSA action venued in the Northern District and brought on behalf of individuals employed by Agilysys as Installation Specialists. *Jones v. Agilysys, Inc.*, 2014 WL 2090034, at *1 (N.D. Cal. May 19, 2014). Plaintiffs alleged that Agilysys misclassified them as exempt employees, and as a result, failed to pay overtime wages as required by state and federal laws. The Court granted the plaintiffs' unopposed motion for

1  settlement approval, noting the settlement constituted between 30% to 60% of recoverable

2  damages which afforded the putative class members a "tangible monetary benefit." *Jones v.*

3  *Agilysys, Inc.*, 2014 WL 2090034, at *2. *See also Knight v. Red Door Salons, Inc.,* No. 08–01520

4  SC, 2009 WL 248367, *5 (N.D.Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a

5  wage and hour action was "substantial achievement on behalf of the class").

6       Here, given the uniqueness of the Bona Fide Plan dispute, where research has found no

7  verdict or settlement of a similar claim, a 33.3% damage recovery should be considered an

8  appropriate and tangible benefit to the affected class.

9  **D.**     **PLAINTIFFS' ATTORNEYS' FEES**

10       Next the Court sets forth the following reasons it feels Plaintiffs' Attorneys' fees are not

11  reasonable each of which we address below

12      (1)    Can Plaintiffs' attorneys receive both statutory and contingent fee awards in
13             this case particularly as the latter reduces the amount each plaintiff
           receives?

14      (2)    What is Plaintiffs' counsel reasonable statutory fee award and is it limited
15             by a common-fund benchmark of 25%? and

    (3)    Would it be more appropriate for the Court to defer ruling on attorneys' fees
16             until after putative plaintiffs have opted in?

17      **1.**     **Plaintiffs' Counsel Can Receive Both Contingent and Statutory Fees.**

18       While the court must avoid the Scylla of simply accepting counsels' account of the value

19  of the legal services which they have provided, it must avoid the Charybdis of decreasing

20  reasonable fees because the attorneys conducted the litigation more as an act *pro bono publico*

21  than as an effort at securing a large monetary return.  *Stanford Daily v. Zurcher*, 64 F.R.D. 680,

22  681–82 (N.D. Cal. 1974), disapproved of on other grounds by *Pennsylvania v. Delaware Valley*

23  *Citizens' Council for Clean Air*, 483 U.S. 711 (1987).

24        **(a)**    **Federal district courts, including the Eastern District of California,**
             **have previously awarded this Plaintiffs' counsel both contingent and**
25               **statutory fees in FLSA actions.**

26       Over the years, Plaintiffs' counsel has been awarded both contingent and statutory fees in

27  their FLSA cases, including in matters where settlements were approved by the Eastern District of

28  California.  Messing Decl. ISO Renewed Motion, paras. 16-19, Exs. 2 – 4.

1   In March of 1991 in the FLSA matter of *Nadeau, et al., v. Office of the Attorney General*,

2   Case No. 2:89-cv-00119-LKK-PAN, Judge Lawrence K. Karlton approved a settlement agreement

3   which awarded this same plaintiffs' counsel a 40% contingent fee from each plaintiff and

4   $200,000 in statutory fees.  Messing Decl. ISO Renewed Motion, para. 17, Ex. 2, pp. 6, 9-10.

5   In January of 1994 in the FLSA matter of *California Union of Safety Employees, Ronald*

6   *Maddox, et al., v. State of California*, Case No. 2:91-cv-01268-LKK-JFM, the clerk served all

7   Parties with the approved a settlement agreement in which plaintiffs were directed to pay their

8   counsel "contractual attorneys' fees" based upon a percentage to be set forth in the release and

9   which awarded plaintiffs' counsel statutory fees.  Messing Decl. ISO Renewed Motion, para. 18,

10  Ex. 3, pp. 7:24-8:1, 10:11-11:10.

11  In December of 1994 in the matter of *California Union of Safety Employees, Jose M.*

12  *Phillips, et al., v. State of California*, Case No. 2:90-cv-00167-LKK-GGH, Judge Karlton

13  approved a settlement agreement which awarded plaintiffs' counsel a 36% contingent fee from

14  each consenter and $600,000 in statutory fees.  Messing Decl. ISO Renewed Motion, para. 19, Ex.

15  4, pp. 4, 10, 26.

16  Similarly, here, Plaintiffs' counsel seeks approval of a settlement agreement which awards

17  both contingency and statutory fees just as the Eastern District Court has done in the past.

18  **(b)    Neither the FLSA nor any controlling case law prohibits Plaintiffs'**
    **counsel from receiving contingent and statutory fees.**

19

20  The U.S. Supreme Court has stated that "We have therefore accepted, at least implicitly,

21  that statutory awards of fees can coexist with private fee arrangements."  *Venegas v. Mitchell*, 495

22  U.S. 82, 88 (1990).  There is nothing in the FLSA or controlling case law that prohibits FLSA

23  plaintiffs from entering into a contingency fee agreement with their counsel as any award under

24  the FLSA is theirs, alone; thus, Plaintiffs' counsel may rightfully be awarded statutory fees

25  pursuant to the FLSA and contingency fees per their contractual agreements with the Plaintiffs.

26  The FLSA's fee-shifting provision does not prohibit Plaintiffs from entering into a private,

27  contingency agreement with their attorneys as it states, in relevant part

28      "Any employer who violates the provisions of section 206 or
        section 207 of this title shall be liable to the employee or

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00045710-8

RENEWED MOTION TO APPROVE SETTLEMENT OF ACTION UNDER FAIR LABOR STANDARDS ACT

1

2

3

4

5

employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages…. *The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action*." 29 U.S.C.A. § 216, emphasis added. Congress's purpose in adopting fee-shifting provisions "was to strengthen the enforcement of selected federal laws by ensuring that private persons seeking to enforce those laws could retain competent counsel."

6

7

*See City of Burlington v. Dague,* 505 U.S. 557, 568 (1992) (*Dague*).

8

9

10

11

12

13

14

Plaintiffs have not found any U.S. Supreme Court, Ninth Circuit Court, or Eastern District of California Court case that prohibits a plaintiff's attorney from collecting both contingency and statutory fees in an FLSA matters.  Bird Decl. ISO Renewed Motion, paras. 5, 7.  However, by analogy, the U.S. Supreme Court has considered a case which involved such an agreement in a 42 U.S. Code section 1983 (the Civil Rights Act) which, like the FLSA, is a fee-shifting statute. Section 1988 identifies the fee-shifting aspect of Civil Rights Act, among other statutes, as follows:

15

16

17

18

19

20

21

"In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, *may allow the prevailing party*, other than the United States, *a reasonable attorney's fee as part of the costs*, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction."

22

23

42 U.S.C.A. section 1988, emphasis added.

24

25

26

27

28

In *Venegas v. Mitchell*, the U.S. Supreme Court held that the Civil Rights Act's fee-shifting provision did not invalidate the plaintiff's contingency fee agreement.  *Venegas v. Mitchell*, 495 U.S. 82 (1990).  The Court noted that Section 1988 by its terms authorized the trial court to order the defendants to pay to Venegas, the prevailing party, a reasonable attorney's fee. As the Court stated

> "[The] aim of the [fee shifting] section, as our cases have
> explained, is to enable civil rights plaintiffs to employ reasonably
> competent lawyers without cost to themselves if they prevail. It is
> likely that in many, if not most, cases a lawyer will undertake a
> civil rights case on the express or implied promise of the plaintiff
> to pay the lawyer the statutory award, *i.e.*, a reasonable fee, if the
> case is won. But there is nothing in the section to regulate what
> plaintiffs may or may not promise to pay their attorneys if they
> lose or if they win. Certainly § 1988 does not on its face prevent
> the plaintiff from promising an attorney a percentage of any money
> judgment that may be recovered. Nor has Venegas pointed to
> anything in the legislative history that persuades us that Congress
> intended § 1988 to limit civil rights plaintiffs' freedom to contract
> with their attorneys."

*Venegas* at 86-87.  As the U.S. Supreme Court further noted that "We have never held that §

1988 constrains the freedom of the civil rights plaintiff to become contractually and personally

bound to pay an attorney a percentage of the recovery, if any, even though such a fee is larger than

the statutory fee that the defendant must pay to the plaintiff."  *Venegas* at 87.

Similarly, here, the aim of the FLSA's fee-shifting section is to enable FLSA plaintiffs to

employ competent counsel. There is nothing in the FLSA to regulate what plaintiffs may or may

not promise to pay their counsel if they lose or if they win, the FLSA does not on its face prevent

plaintiffs from promising their counsel a percentage of any money judgment that may be

recovered, and nothing has been found in the legislative history that should persuade the Court

that Congress intended the FLSA to limit FLSA plaintiffs' freedom to contract with their

attorneys.  Moreover, the U.S. Supreme Court has never ruled that FLSA plaintiffs cannot enter

into a private agreement with their counsel.

The *Venegas* Court stated that because the statute's award of fees was held by the

prevailing party, and not their attorney, then "[the Court had] consistently maintained that fees

may be awarded under § 1988 even to those plaintiffs who did not need them to maintain their

litigation, ***either because they were fortunate enough to be able to retain counsel on a fee-***

***paying basis*** [citation] or because they were represented free of charge by nonprofit legal aid

organizations [citation]."  *Venegas* at 87-88, citations omitted, emphasis added.

The Court stated "just as we have recognized that it is the party's entitlement to receive the

fees in the appropriate case, so have we recognized that as far as § 1988 is concerned, it is the

party's right to waive, settle, or negotiate that eligibility. [Citation.] Much the same is true of the substance of a money judgment recovered under § 1983 (exclusive of fees awarded under § 1988), of which the contingent fee in this case is a part. A cause of action under § 1983 belongs 'to the injured individua[l],…' [Citation]." *Venegas* at 87-88, citations omitted. So here, any award made to the Plaintiffs and Consenters is theirs alone to allocate as they deem, including through a contingency fee agreement with their counsel.

**(c)** **Plaintiffs' counsel entered into a contingency fee agreement to ensure this case would be economically feasible.**

To assist in reaching settlement in this matter, Plaintiffs' counsel agreed to cap their statutory fees at $106,625.59, which at the time represented counsel's normal hourly rates for the 278.7 hours they had worked on the matter at the time the Parties reached settlement. Messing Decl. ISO Initial Motion, para. 21, Dkt. No. 26-2; Messing Decl. ISO Renewed Motion, paras. 27-28. Since that time until February 15, 2018, Plaintiffs' counsel has worked an additional 118.2 hours on this matter (putting current fees in this matter at $148,766) and counting. Messing Decl. ISO Renewed Motion, para. 28, Exs. 5-6. At this point, based on the statutory amount to be paid pursuant to the settlement agreement versus the amount of work actually done, Plaintiffs' counsel will currently receive 72% of the statutory fees which they could have legitimately requested without a multiplier (*i.e.*, $106,625.59 (capped fee) divided by $148,766 (current fees)). Messing Decl. ISO Renewed Motion, paras. 27-28. Although Plaintiffs and Consenters contracted to pay counsel 25% contingency fees (given the point – less than one month from trial – at which the matter was in litigation) counsel reduced the amount to 20%.[5] Messing Decl. ISO Renewed Motion, para. 32. As counsel expected they would receive both contingency and statutory fees, their decisions were made to facilitate settlement while ensuring litigation of this matter would be economically feasible. Messing Decl. ISO Renewed Motion, para. 31.

The economic logic of counsel's reduced contingency plus reduced statutory approach can

---

[5] Although counsel does not have a contingency contract with the Putative class, the agreement entered into with Plaintiffs and Consenters is evidence of the reasonableness of contingency plus statutory fees.

be understood when considering the outcome under various scenarios.  At the commencement of a

collective action, counsel has no definite knowledge of how large the class will be, how much time

will be committed to the action, nor, if successful, how large the common fund will be.  So only

two or three members participate in the action, the arbitrary use of a 25%-common-fund-only

approach to fees would likely not adequately compensate counsel for their representation.  At the

other end of the spectrum, if the class is comprised of 1,000,000 people, a statutory-fees-only

approach would not be commensurate with obtaining a benefit for such a large class.

Plaintiffs' approach is proven when fees in this action are reviewed.  The $106,625.59

capped statutory fees Plaintiffs' counsel will receive from the County plus the $43,814.74 counsel

will receive from contingency fees total $150,440.33 which is less than $2,000 more than

counsel's current fees of $148,766.00, which are continuing to add up.  Messing Decl. ISO

Renewed Motion, para. 27-30.

**(d)      Contingency fees are appropriate and do not act as a ceiling on statutory fees.**

In *Blanchard v. Bergeron*, 489 U.S. 87, 88 (1989), the United States Supreme Court placed

its imprimatur on contingency agreements and awards in fee-shifting 42 U.S.C. section 1988 Civil

Rights Act matters when it held that such agreements do not act as a cap on fees awarded to

plaintiff's counsel.  .  The Court noted Section 1988 provides that a court, "in its discretion, may

allow ... a reasonable attorney's fee..." but does not provide a specific definition of what a

"reasonable" fee is.  *Id.*, at 91.

In past cases when considering the award of attorney's fees under § 1988, it had turned its

attention to *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (1974) because, a*s* the

Court stated in *Hensley v. Eckerhart*, 461 U.S. 424, 429-431 (1983), *Johnson* provides guidance to

Congressional intent concerning attorney's fees under § 1988 as both the House and Senate

Reports refer to the 12 factors set forth in *Johnson* for assessing the reasonableness of an

attorney's fee award.  *Blanchard*, at 91.  In the course of its discussion of the factors to be

considered by a court in awarding attorney's fees, the *Johnson* court dealt with fee arrangements:

> "Whether or not [a litigant] agreed to pay a fee and in what amount
> is not decisive. Conceivably, a litigant might agree to pay his

counsel a fixed dollar fee. This might be even more than the fee eventually allowed by the court.  Or he might agree to pay his lawyer a percentage contingent fee that would be greater than the fee the court might ultimately set. Such arrangements should not determine the court's decision. The criterion for the court is not what the Parties agree but what is reasonable."

*Blanchard*, at 92 (citing to *Johnson* at 488 F.2d at 718).

Congress pointed to the three District Court cases in which the *Johnson* factors are "correctly applied" and those cases clarify that the fee arrangement is but a single factor and not determinative.  *Blanchard*, at 92.  In *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (ND Cal.1974), aff'd, 550 F.2d 464 (CA9 1977), rev'd on other grounds, 436 U.S. 547 (1978), for example, the District Court considered a contingent-fee arrangement to be a factor, but not dispositive, in the calculation of a fee award.  In *Davis v. County of Los Angeles, supra,* the court permitted a fee award to counsel in a public interest firm which otherwise would have been entitled to no fee. Finally, in *Swann v. Charlotte-Mecklenburg Board of Education,* 66 F.R.D. 483 (WDNC 1975), the court stated that reasonable fees should be granted regardless of the individual plaintiff's fee obligations. *Johnson*'s "list of 12" thus provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees; but the one factor at issue here, the attorney's private fee arrangement, standing alone, is not dispositive.

The *Blanchard* Court noted

"It is true that the purpose of § 1988 was to make sure that competent counsel was available to civil rights plaintiffs, and it is of course arguable that if a plaintiff is able to secure an attorney on the basis of a contingent or other fee agreement, the purpose of the statute is served if the plaintiff is bound by his contract. On that basis, however, the plaintiff should recover nothing from the defendant, which would be plainly contrary to the statute.

"[W]e have said repeatedly that '[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.' *Blum v. Stenson,* 465 U.S. 886, 888, (1984). The courts may then adjust this lodestar calculation by other factors. **We have never suggested that a different approach is to be followed in cases where the prevailing party and his (or her) attorney have executed a contingent-fee agreement…**. Further, as we said in *Blum,* 'Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization.' "

1  *Blanchard*, at 93-94, emphasis added.

2      The Court went further

3      "If a contingent-fee agreement were to govern as a strict limitation
       on the award of attorney's fees, an undesirable emphasis might be
4      placed on the importance of the recovery of damages in civil rights
       litigation.....  Congress has elected to encourage meritorious civil
5      rights claims because of the benefits of such litigation for the
       named plaintiff and for society at large, irrespective of whether the
6      action seeks monetary damages."

7  *Blanchard*, 489 U.S. 87, 90-96 (1989).

8      Thus, not only can this Court properly approve a settlement agreement that awards both

9  contingency and statutory fees, it need not be concerned should the contingency agreements limit

10  the amount of statutory fees that can be awarded.

11          **(e)      The Order misapplies the *Kerr*[6] factors to an award of contingency fees.**

12      The Order states:

13      "Regardless of whether such [a contingency fee] arrangement
        might be permissible in some circumstances, it is not warranted
14      here.  This case settled at an early stage.  No motion for
        conditional certification of the collective was filed, nor were any
15      dispositive motions.  The case was not especially complex; indeed,
        liability as to the plaintiffs who were paid cash in lieu of health
16      benefits was clearly established by the Ninth Circuit's decision in
        *Flores v. City of San Gabriel*, 824 F.3d 890, 901, 907 (9th Cir.
17      2016)."

18      But it appears the Order's conclusion results from misapplication of the *Kerr* factors used

19  to analyze whether a percentage-of-the-fund or lodestar attorneys' fee award is reasonable.  *Walsh*

20  *v. CorePower Yoga LLC*, No. 16-CV-05610-MEJ, 2017 WL 4390168, at *9 (N.D. Cal. Oct. 3,

21  2017) citing to *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

22      Even so, some of the stated assertions are incorrect:  This case did not settle at an early

23  stage; it settled in early November 2017, less than one month before the December 4, 2017 trial

24  date. Dkt. No. 17.  The case was more complex than simply finding the County was liable for cash

25  back in lieu of health benefits pursuant to *Flores*.  In fact Plaintiffs' counsel invested hours in

26  developing its theory that the County's flexible benefits plans was not bona fide and that, therefore,

27  _____

28  [6]      The *Kerr* factors are discussed in more detail in counsel's argument concerning the
    reasonableness of the lodestar in this case in Section 2(a), below.

the County was liable to *all* non-exempt County employees, not just to those who had received cash back (the Bona Fide dispute).    Bird Decl. ISO Renewed Motion, para. 6.  An extensive amount of time was expended in obtaining and reviewing payroll documents from the County through both informal and formal discovery with Plaintiffs' counsel retaining a tax consultant, at a cost of $6,000 which counsel will not recover, to analyze the Bona Fide dispute.  Bird Decl. ISO Renewed Motion, para. 6.  The successful result of this dispute is that over 1,000 County employees will receive a benefit from this settlement, including settlement amounts premised on the Bona Fide plan theory.  Counsel's activities in this matter ran the full gamut of initial case strategy to preparing for trial:  time was spent analyzing the County's answer and researching the validity of its defenses; analyzing the bargaining units memoranda of understanding with the County to determine which units may be included in a collective action; extensively researching the flexible benefits/bona fide plan issue; consulting with an economist and drafting extensive discovery requests (to include 109 requests for document production, 44 requests for admission, and 21 interrogatories) to allow counsel to obtain information for the economist and tax consultant's use in determining whether the County's flexible benefits plan was bona fide; consulting with a tax expert on the bona fide plan issue; negotiating with defense counsel to include traveling from San Francisco to Sacramento for a face-to-face conference; extensive drafting and revisions to the settlement agreement; and, as this matter was less than a month from trial, preparing the matter to proceed to trial.  Bird Decl. ISO Renewed Motion, para. 6.  Finally, although Plaintiffs' counsel performed extensive research, he found no statutes or controlling case law to support the Order's position that counsel's contingency fees should be reduced and counsel penalized for attempting to save the Parties' costs by not moving for conditional certification or filing dispositive motions but, instead, working informally with the County to resolve the matter.  Bird Decl. ISO Renewed Motion, para. 5, 7.  Reducing fees punishes laudatory, collaborative conduct.

> **(f)**      **The Cases Cited by the Order Do not Prohibit Plaintiffs from Entering a Private Agreement With Their Counsel.**

The Order cites *YueZhou v. Want's Rest.*, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007) (*YueZhou*), *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 231 (S.D.N.Y.

1    2016) (*Gurung*), *Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp. 2d 1259, 1263 (M.D.

2    Fla. 2008) (*Zegers*), and *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, 2016 WL 153266, at *8

3    (N.D. Cal. Jan. 13, 2016) (*Dunn*).  But none of these cases stand for the proposition that Plaintiffs'

4    counsel are barred from obtaining both contingent and statutory fees.

5         *YueZhou,* a Northern District case,  is not controlling and addresses different issues than

6    those presented here.  The Order offers the following incomplete citation noting "Congress' intent

7    that an FLSA claimant should receive his full wages plus the penalty without incurring any

8    expenses for legal fees or costs." *YueZhou* at *1.  In that case, the court noted in its order that the

9    FLSA plaintiffs' settlement did not preclude an award of fees to the plaintiffs' *former counsel*.

10   Thus the complete citation:  "*Allowing Parties to waive an award of fees* would contravene

11   Congress' intent that an FLSA claimant should receive his full wages plus the penalty without

12   incurring any expense for legal fees or costs."  *Yue Zhou*  at *1, emphasis added.

13        *Gurung*, a Southern District of New York case, does not hold that Plaintiffs' attorneys here

14   cannot receive both contingent and statutory fees.  It simply rules that a court may consider a

15   retainer agreement in assessing the reasonableness of the attorneys' fees sought.  *Gurung* at 231.

16        *Zegers*, a Middle District of Florida case, finds that *Venegas, infra*, cannot be found to

17   support the proposition that contingency fee agreements should be allowed in FLSA matters.

18   *Zegers* at 1263.  In contrast,  the Ninth Circuit does allow FLSA plaintiffs to enter into

19   contingency fee agreements as the case underlying the U.S. Supreme Court's *Venegas* decision

20   itself concluded.  See *Venegas v. Skaggs*, 867 F.2d 527, 534 (9th Cir. 1989), *aff'd sub*

21   *nom. Venegas v. Mitchell*, 495 U.S. 82, 110 S. Ct. 1679, 109 L. Ed. 2d 74 (1990) (affirming the

22   district court's ruling that plaintiff's counsel's entitlement to attorney's fees was not limited to the

23   § 1988 award and that an addition 40% contingent fee was reasonable).

24        Finally *Dunn*, another Northern District case, also concerned factors not presented here.

25   There, the settling Parties actively negotiated additional attorneys' fees of 20% of the plaintiffs'

26   award as part of the settlement.  *Dunn* at *8.  In the instant action the Parties did not negotiate any

27   additional fees for Plaintiffs' counsel.  Here the Parties simply agreed to fees that Plaintiffs,

28   Consenters, and their counsel had already contracted for (albeit at a reduced rate of 20% instead of

1   25%) as well as what is provided for by statute (also reduced from the amount that could be

2   sought by an agreed upon cap).[7]

3       **2.**        **Plaintiffs' Statutory Attorneys' Fees Are Reasonable.**

4          Taking a case on a contingency fee basis does not prohibit counsel from obtaining

5   statutory fees, particularly here where Plaintiffs' statutory fee request is reasonable as it

6   represents only 70% of the lodestar which they could now otherwise reasonably request.  Here,

7   counsel is spreading the burden of paying counsel by requesting statutory fees capped at a level

8   lower than counsel could otherwise request ($106,625.59 (capped fee) versus $148,766 (current

9   fees) and reduced contingent fees (20% versus 25%)).

10             **(a)**        **Plaintiffs' lodestar represents a reasonable fee.**

11          In ruling on a Title 42 U.S.C. § 1988 fee-shifting matter, the United States Supreme Court

12   noted that using the lodestar approach to calculate attorneys' fees has "achieved dominance in the

13   federal courts."[8]  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 542-43 (2010); see *Oyarzo v.*

14   *Tuolumne Fire Dist.*, 2014 WL 1747236, at *3 (E.D. Cal. Apr. 30, 2014) (noting the Ninth Circuit

15   utilizes the "lodestar" approach for assessing reasonable attorney fees).  The lodestar figure is

16   calculated by multiplying the number of hours the prevailing party reasonably expended on the

17   litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and

18   for the experience of the lawyer.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941

19   (9th Cir. 2011) (*Bluetooth*).  "Although imperfect, it has several important virtues:  It produces an

20   award that approximates the fee the prevailing attorney would have received for representing a

21   paying client who was billed by the hour in a comparable case; and it is readily administrable, …"

22   *Perdue* at 543, citations omitted.  As the Court noted "there is a 'strong' presumption that the

23   lodestar method yields a sufficient fee."  *Id*.  The lodestar "produces an award that approximates

---

25   [7]  In fact, as previously shown, Plaintiffs' counsel agreed both to less statutory fees than they
26   could have received (currently 70%) as well as less contingency fees than contracted for (20%
      instead of 25% warranted given the case's status).

27   [8]  The Supreme Court's case law construing what is a "reasonable" fee under a fee-shifting statute
28   applies uniformly to all of the fee-shifting statutes.  *City of Burlington v. Dague*, 505 U.S. 557,
      561–62 (1992).

1  the fee the prevailing attorney would have received for representing a paying client who was billed

2  by the hour in a comparable case." *Perdue* at 542.

3         In evaluating the reasonableness of a lodestar award and determining whether to adjust the

4  amount, courts *primarily* consider the benefit for the class:  the level of success achieved by the

5  plaintiff. *Bluetooth*, 654 F.3d 935, 941–42 (citing to *McCown v. City of Fontana,* 565 F.3d 1097,

6  1102 (9th Cir.2009).  Courts also take into account the factors set forth in *Kerr v. Screen Extras*

7  *Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir.1975) (the *Kerr* factors):

8              " (1) the time and labor required,
               (2) the novelty and difficulty of the questions involved,
9              (3) the skill requisite to perform the legal service properly,
               (4) the preclusion of other employment by the attorney due to
10                 acceptance of the case,
               (5) the customary fee,
11             (6) whether the fee is fixed or contingent,
               (7) time limitations imposed by the client or the circumstances,
12             (8) the amount involved and the results obtained,
               (9) the experience, reputation and ability of the attorneys,
13             (10) the "undesirability" of the case,
               (11) the nature and length of the professional relationship with the
14                  client and
               (12) awards in similar cases."
15

16  *Oyarzo v. Tuolumne Fire Dist.*, 2014 WL 1747236, at *4 (E.D. Cal. Apr. 30, 2014).

17         Here, counsel has obtained a significant, tangible, and widespread benefit for the class.

18  Almost 1,000 current and former Yolo County employees will receive both an immediate and,

19  because the County changed its pay practices, ongoing monetary benefit from this settlement.   As

20  to the other *Kerr* factors:  Counsel invested over 400 hours litigating this matter with a big part of

21  that time dedicated to developing the novel "Bona Fide Plan" dispute.  Counsel's efforts resulted

22  in the County agreeing to settle that issue as well as the *Flores* claim with both resulting in a direct

23  monetary benefit to the class.  Counsel Gary Messing has over 40 years' experience litigating

24  FLSA and wage and labor cases and has represented the Yolo County Deputy Sheriffs'

25  Association for nearly 20 years.  Messing Decl. ISO Renewed Motion, para. 39.  Further, a review

26  of counsel's billing will show that the hours expended on the matter were reasonable, with no

27  unnecessary work performed, with counsel being successful on every claim brought in the action,

28  no work performed on unrelated litigation, and no excessive time entries or duplication of work

1  effort.  Messing Decl. ISO Renewed Motion, para. 32, Exs. 5-6.  Therefore, in the instant matter,

2  Plaintiffs' attorneys' could properly receive their lodestar and statutory fees, through February 15,

3  2018, of $148,766.00.  *Id.*  Even so, Plaintiffs' attorneys' agreed to what now amounts to about a

4  30% reduction of their statutory fees to $106,625.59 which, based upon the same *Kerr* factors

5  enunciated above, is more than a reasonable fee .  Messing Decl. ISO Initial Motion, Ex. A:

6  Settlement Agreement, "Terms," Section 3, Dkt. No. 26-3; Messing Decl. ISO Renewed Motion,

7  paras. 27-31, Exs. 5-6.  Finally, as previously noted, research has found no awards for similar

8  matters in which the unique Bona Fide Plan issue is settled in addition to the *Flores* cash-back

9  issue.  Bird Decl. ISO Renewed Motion, para. 5, 7.  Therefore, considering the applicable *Kerr*

10  factors, counsels' request for what amounts to 70% of the statutory fees that could be requested is

11  reasonable.  Messing Decl. ISO Renewed Motion, para. 33.

       **(b)**     **Utilizing a benchmark to determine attorneys' fees is not appropriate here.**

13        Plaintiffs' attorneys' fees in this matter should be determined by utilizing the lodestar

14  calculation and not based upon any arbitrary and inflexible benchmark percentage that is used

15  where fees are calculated as a percentage of a common fund from which those fees are then paid

16  out and which would result in an amount significantly less than the lodestar.  This is especially

17  true here given counsel's successful recovery on all claims including the novel Bona Fide Plan

18  dispute.

19        As noted above, the lodestar is presumed to be reasonable and may be adjusted up or down

20  based on a variety of factors with the foremost being the benefit obtained for the

21  class. *See Hensley v. Eckerhart,* 461 U.S. 424, 434-36.  The ultimate reasonableness of the fee is

22  primarily determined by reference to the level of success achieved by the plaintiff.  *Bluetooth*, 654

23  F.3d 935, 941–42 (citing to *McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir.2009).

24  Here, Plaintiffs' counsel succeeded on every claim it brought against that County - even the novel

25  claim that the County owed damages because its Flexible Benefits Plan was not bona fide.  Thus,

26  counsel could rightfully claim the $148,766.00 they have expended as their lodestar as appropriate

27  statutory fees.  It would be a perverse result for counsel to be paid based on awarded 25% of

28

1  Plaintiffs' $207,279.30 damage award which would be an effective 66% reduction in Plaintiffs'

2  attorneys' lodestar.

3       The 2014 Eastern District case of *Oyarzo v. Tuolumne Fire Dist.* is instructive.  *Oyarzo v.*

4  *Tuolumne Fire Dist.*, 2014 WL 1747236, (E.D. Cal. Apr. 30, 2014) (*Oyarzo*).  In that case plaintiff

5  Oyarzo filed a complaint against defendants Tuolumne Fire District ("TFD") among others

6  alleging violations of the FLSA, among other claims.  Oyarzo sought attorneys' fees of

7  $190,014.67 against TFD which opposed the motion on the ground that it included numerous tasks

8  unrelated to the FLSA claim and that plaintiff had "marginal" success in the action.  *Oyarzo v.*

9  *Tuolumne Fire Dist.*, 2014 WL 1747236, at *5 (E.D. Cal. Apr. 30, 2014).  The court noted "If the

10 plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or

11 limited success' was obtained, full compensation may be excessive." *Oyarzo* at *5.

12      After evaluating under the *Kerr* factors, the court reduced hours spent on claims that were

13 unsuccessful and unrelated to the FLSA and awarded Oyarzo plaintiffs' attorneys' fees of

14 $94,973.50 even though it noted that the plaintiffs' total FLSA damages ($68,000.00 plus

15 liquidated damages) would be less than $140,000.00.  The court noted that considering fee awards

16 in other Eastern District FLSA actions for unpaid wages, the award to Oyarzo was well within the

17 reasonable range.  *Oyarzo* at *10; see *Pehle v. Dufour*, No. 2:06–cv–01889–EFB, 2014 WL

18 546115, at *7–8 (E.D.Cal. Feb.11, 2014) (awarding 394.85 hours and total attorney fees award of

19 $93,131.25); *Lazaro v. Lomarey, Inc.,* No. 5:09–cv–02013, 2012 WL 2428272, at *3 (N.D.Cal.

20 June 26, 2012) (awarding 118.55 hours with a 40 percent "success" reduction for total attorney

21 fees award of $20,393.10); *Krouse v. Ply Gem Pacific Windows Corp.,* No. 3:10–cv–00111–HA,

22 2012 WL 3241678, at *4 (D.Or. Aug.7, 2012) (awarding $35,000.00 in attorney fees); *Ulin v.*

23 *ALEA72 Inc.,* 2011 WL 4974282, at *4 (N.D.Cal. Oct.19, 2011) (awarding $81,526.77 in attorney

24 fees); *Traxler v. Multnomah County,* 2008 WL 2704490, at *3 (D.Or. July 7, 2008) (awarding

25 attorney fees of $113,236.88).  Had *Oyarzo* court utilized a 25% benchmark, it would have

26 awarded Oyarzo's counsel only $35,000 (25% of plaintiff's $140,000.00 damages) rather than the

27 $94,973.50 the court found to be reasonable.

28      In 2017, the Northern District of California Court awarded attorneys' fees in two FLSA

1   matters that were greater than the amount of recovery received by the plaintiffs.  In October of

2   2017 in the matter of *David Meinhardt, et al., v. City of Sunnyvale*,  No. 5:16-cv-05501-EJD,

3   (N.D. Cal. Oct. 16, 2017), Judge Edward Davila awarded plaintiffs $6,600 in damages while

4   awarding plaintiffs' counsel $43,400 in attorneys' fees and $15,000 for costs.  Messing Decl. ISO

5   Renewed Motion, paras. 20-23, Ex. 7 and 8 at p. 2 "Terms", Section 1(a.), Dkt. Nos. 59 and 59-1.

6   In that matter, just as here, plaintiffs were non-exempt employees who alleged the city violated the

7   FLSA by excluding cash in lieu of health care benefits from the regular rate of pay.  Messing Decl.

8   ISO Renewed Motion, para. 20-23, Ex. 7 at p. 2:4-16, Dkt. No. 59.  But, unlike here, the attorneys

9   and settlement agreement in the *Meinhardt* case did not set grapple with the unique Bona Fide

10  Plan claim through which Plaintiffs' counsel here has obtained damages.  *Id.*  In November of

11  2017 in the case of *Ross Anderson, et al., v. Marinwood Community Services District*,  No. 3:16-

12  cv-07381-LB, (N.D. Cal. Nov. 22, 2017), Magistrate Judge Laura Beeler awarded plaintiffs

13  $10,304 in damages while awarding plaintiffs' counsel $45,000 in attorneys' fees and costs.

14  Messing Decl. ISO Renewed Motion, para. 20, 24-26, Exs. 9 and 10 at p. 2 "Terms", section 1

15  "Settlement Amount," Dkt. Nos. 41 and 40-1, respectively.

16          In a 2014 FLSA case, the Central District awarded attorneys' fees several times more than

17  the amount of damages awarded to the plaintiffs.  The 2014 case of *Nolan v. City of Los Angeles*

18  involved Los Angeles police officers who sued the city of Los Angeles for alleged violations of

19  the wage and overtime provisions of the FLSA.  *Nolan v. City of Los Angeles*, 2014 WL

20  12564127, at *3 (C.D. Cal. Feb. 10, 2014) (*Nolan*).  After the court approved a settlement

21  agreement awarding the 21 plaintiffs $89,319, which represented plaintiffs' combined unpaid

22  overtime compensation and liquidated damages, the court considered the motions for attorney's

23  fees and costs of two separate firms (the law offices of Howard Hafif ("Hafif") and the law offices

24  of Fenja Klaus ("Klaus") who had represented the plaintiffs.

25          Attorney Hafif submitted 349 pages of billing entries documenting 4,327.26 hours of work

26  over a period of seven years for multiple attorneys and a paralegal, for a total lodestar figure of

27  $1,514,907.64.  *Nolan*, at *3.   The City opposed, arguing that the lodestar figure was excessive

28  and unreasonable, particularly in light of Plaintiffs' limited success.  *Id.*  The Court agreed with

1   the City, in part, but ultimately awarded Hafif the majority of the fees he requested.   *Id.*   After

2   reviewing various declarations provided by Hafif, the court found the firm's attorneys' proposed

3   hourly rates reasonable.   *Nolan*, at *3 (citing to *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11

4   (1984); *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998); *Schwarz v. Sec'y of Health and*

5   *Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995); and   *United Steelworkers of Am. v. Phelps Dodge*

6   *Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).   Having determined the reasonable hourly rates, the

7   Court reviewed billing records to determine the number of hours "reasonably expended" on the

8   litigation.   *Nolan*, at *4 (citing to *Hensley v. Eckerhart*, 461 U.S. 424, 433-340).   The court

9   reduced the lodestar hours based on time Hafif spent on two unsuccessful FLSA claims ("gap

10  time" and "donning and doffing"), unrelated litigation, clerical and administrative tasks,

11  duplicative, and block billing.   *Nolan*, at *4-8.   After its reductions, the court arrived at 1,997.65

12  hours reasonably expended on the matter and multiplied those by the reasonable hourly rate to

13  compute a lodestar figure of $838,254.39 which it awarded to Hafif as attorney's fees.[9]   *Nolan*, at

14  *8.

15          The presumption that attorneys' claimed hours are reasonable is essential because the

16  purposes of the fee-shifting statutes will not be met unless plaintiffs' attorneys are reasonably

17  compensated for all their time.   Courts must award appropriate compensation to ensure that

18  competent counsel will take on cases that seek to protect an important public right but may not be

19  financially lucrative.   *See City of Burlington v. Dague,* 505 U.S. 557, 568, 112 S.Ct. 2638, 120

20  L.Ed.2d 449 (1992) ("Congress' purpose in adopting fee-shifting provisions was to strengthen the

21  enforcement of selected federal laws by ensuring that private persons seeking to enforce those

22  laws could retain competent counsel.").   *See also Parkinson v. Hyundai Motor America,* 796

23  F.Supp.2d 1160, 1164 (C.D.Cal.2010) ("Without the incentive of a fee award, plaintiffs, such as

24  the class in this case, could not afford to hire counsel to vindicate their rights.").

25          Here, Plaintiffs' counsel's declaration established that the requested rates are in line with

26

27  _____

28  [9]   As for Klaus, the court denied her motion in its entirety as although she declared that, before
joining Hafif's firm, she spent approximately 280 hours working on the matter for total fees of
$112,000, she had no billing records to back-up her claim.   *Nolan*, at *9.

those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984); *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998); *Schwarz v. Sec'y of Health and Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995); and *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); and *Slezak v. City of Palo Alto*, 2017 WL 2688224, at \*1 (N.D. Cal. June 22, 2017).

Courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir.2008); *Blackwell v. Foley,* 724 F.Supp.2d 1068, 1081 (N.D.Cal.2010) ("An attorney's sworn testimony that, in fact, [she] took the time claimed ... is evidence of considerable weight on the issue of the time required.")  The United States Supreme Court has stated that in deciding the reasonableness of an attorney's fee award, "the most critical factor is the degree of success obtained."  *Hensley*, 461 U.S. at 436. The Supreme Court has articulated a two-part inquiry in cases in which a plaintiffs success is limited: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* at 434.  In this action, Plaintiffs' counsel prevailed on all claims alleged in their complaint – even the novel claim that the County's flexible benefits plan was not bona fide and it, therefore, owed damages to 986 Putative Plaintiffs.  Based on their 100% degree of success, Plaintiffs' counsel should be awarded statutory fees up to the $106,625.59 cap, especially as that amount represents only 70% of the amount counsel could rightfully seek.

> **3.      As the County Will Pay a Specific, Set Amount of Damages, the Court May Properly Award Attorneys' Fees after Approving the Settlement Agreement.**

In this matter, as a *cy pres* will be designated, the County will pay a set amount of $207,279.30 in damages no matter how many Putative Plaintiffs opt in.  Messing Decl. ISO Renewed Motion, para. 7.  As the amount of damages is known and will not change, once the settlement agreement is approved attorneys' fees will be known and the Court may appropriately award them.  Even so and in the interest of allowing the Court to focus solely on the Parties'

settlement agreement, Plaintiffs would not object to defer their request for attorneys' fees until after the Court approves the agreement if the court deems it necessary or appropriate.

## II.

## CONCLUSION.

In sum:

A.    Notice:

    (1)    Notice will be sent both to current *and former* non-exempt County employees.

    (2)    The County may properly serve notice of the settlement as the County will pay a set amount of damages with any remainder going to a *cy pres* while the County's deputy County counsel declares that as an officer of this Court he will ensure notices of the settlement will be served on all Putative Plaintiffs.

    (3)    The envelope containing the notice will have Plaintiffs' counsel's return address so Plaintiffs' counsel will know if a Putative Plaintiff does not receive notice and will then conduct web searches for their current address.

B.    Release:

    (1)    The revised release lists the claims from the complaint that the Putative Plaintiffs will be releasing and, further, the Parties will make the settlement agreement available at the Clerk's office while Plaintiffs' counsel will post it on their website.

C.    Settlement Agreement

    (1)    Different bargaining units have different settlement periods because the County fixed their pay periods at different times?

    (2)    66.7% is an appropriate discount for payments made under the Bona Fide Plan dispute because research has found no verdicts or settlements to a similar claim.

D.    Plaintiffs' Attorney Fees

    (1)    There is no case law or statute that prohibits Plaintiffs' attorneys from receiving both statutory and contingent fee awards.

    (2)    The lodestar is presumed reasonable even as Plaintiffs' attorneys have agreed to cap their statutory fees at 66% of that amount.

    (3)    Although the amount of damages the County will pay is set and the Court can calculate and award damages now, Plaintiffs would not object to defer their request for attorneys' fees until after the Court approves the agreement and all Putative Plaintiffs have opted in.

1    Dated:  February 21, 2018            MESSING ADAM & JASMINE LLP

2

3                                         By _____

4                                               /s/ D. Paul Bird II
                                              GARY M. MESSING
5                                             JASON H JASMINE
                                              D. PAUL BIRD II
6                                             Attorneys for Plaintiff EVAN ALDER, et al.

7    Dated:  February 21, 2018            OFFICE OF COUNTY COUNCIL
                                          YOLO COUNTY
8

9

10                                        By _____
                                                /s/ Ronald Martinez
11                                            RONALD MARTINEZ
                                              Attorney for Defendant COUNTY OF YOLO
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28